Good morning. May it please the court, Bo Sterling, pro bono counsel on behalf of Petitioner Usanga. Usanga alleges... Can I interrupt you for just a moment? Yes. Did we appoint you as a pro bono counsel for this? Yes, your honor, through the court's pro bono program. Yeah, okay. Thank you. Thank you for doing this. Oh, thank you. It's my pleasure. Usanga alleges in this case that he was tortured on a previous visit to Nigeria by agents of Nigerian state security forces and that it's likely that he will be tortured again if removed back to Nigeria. I thought the issue here was the area boys, not the government. And if that's correct, what evidence is there in the record that the area boys has anything whatsoever to do with the government of Nigeria? It seemed to me from the record that the area boys are basically a bunch of local thugs who have themselves attacked and killed Nigerian soldiers. Am I wrong? You are wrong in the sense that there is testimony in the record from Usanga himself regarding the area boys being in part for agents... And on what does he base that? Based on his experience being there as a Nigerian national and having spent time there in 1999 and 2000. What specific facts does he allege that shows the nexus between the government of Nigeria and the area boys? I'm looking at page 226 of the administrative record, your honor. And all we have is Usanga's testimony based on his experience there. And he says... And what he says is, he's talking about the area boys specifically who detained him. And what he clarifies later on in his testimony is that the area boys were either a part of or acting at the direction of the state security forces. That's a conclusive reality. I'm just summarizing. I'm going to quote directly what he says. They call it SSS, the Nigerian State Security Service. And then there's a question, all right, but they're not actually part of the government. They're just a criminal organization, right? And Usanga's answer, they are part of the government. All right. And the question, all right, so the SSS is part of the government. And he answers, yes, Nigerian, you know the state. So the SSS detained you. Yes. They incorporate with the area boys. They called them the area boys after that. I'll acknowledge, your honor, that it's not entirely clear, you know, what he's alleging as the association with the area boys. But it does appear that the Nigerian state security forces are agents of the government. Inference can be drawn certainly that they are using the area boys as an instrumentality of their oppression and torture. Okay. And for our purposes, as you know, the country report finds that the area boys are a criminal gang who have attacked and killed Nigerian soldiers. There are news reports and so on and so on and so on. It says the same. The only information that I have heard about tying these two together is the allegation of your client. For our purposes, how do we weigh this? Are we supposed to weigh it? What deference do we give to the IJ and the BIA in a matter like this? Well, the burden is certainly on Usanga to prove that he's likely to be tortured and that the torture is going to be at the behest of the government or direction of the government or blind disregard of the government. The standard is substantial evidence. The CFR, 8 CFR 208.16, I believe it is, talks about the court looking at all of the potentially relevant evidence. But it does also say specifically that the evidence, the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. So this court can, if it decides to do so, can take into account his testimony without requiring further corroboration. And certainly in this case, the IJ did specifically find that Usanga's testimony was credible. There was no finding of adverse credibility by either the IJ or the board. So I think that it's within the province of this court. As to the nexus between the government and the area boys? The finding of credibility was a general one. The IJ obviously disagreed that there was a nexus that had been established in the evidence, mostly relying on the lack of corroborative proof. Yeah. An adverse credibility finding or the lack of it is a tricky one where we're not talking about what happened to so-and-so. So if the petitioner says they came in and they took me to the police station, they then beat me and so on, adverse credibility, that's easy. It goes straight to that. If there's no adverse credibility finding, we simply believe the story. But with respect to the character of the area boys, if he's credible, he may nonetheless be mistaken. So it's hard to say merely because he's credible that we have to credit his statement that the area boys are part of the government. I mean, that's my problem. I have trouble getting immediately from he's credible to accepting that statement as true. But that is an excellent point, Your Honor, and it is a difficult one. And I would address that in two ways. And again, I'm looking at the administrative record at page 229 this time. And Usanga, and I'm not clear if this is a 2000 incident or a 1999 incident, but what he testifies to is the fact that he was taken to the police station as part of this contact with the area boys. And it was actually the officials at the police station that were incidentally had to pay the bribe. So I think that is some evidence simply beyond Mr. Usanga's testimony as to the nexus point. If we accept as true his statements that he was taken to the police station, that the state security forces are in fact using the area boys as an instrumentality to coerce bribes or whatever. Where is that in the administrative record? Page 229, around line 15, middle of the page. And he says, okay, so they actually arrested you in 1999 as well? And he says, no, okay, yes. Question, did they take you to the police station? Answer, exactly. They being? They being, and it's not entirely clear. I'll acknowledge, Your Honor, as much as a testimony isn't, but it seems to be that it was an encounter with the area boys that then ended him up at the police station. And also, I mean, I have looked at the State Department document that you're referring to, and it does talk about the corruption of the police department and the state agencies. So it's not, again, not inconceivable as part of that corruption process that they would use private actors as their instrumentalities to accomplish their oppression. The burden is on your client to show by substantial evidence that there is a nexus. Yes, I agree with that, Your Honor. Now, assume for a moment that we agree with you and that there's enough evidence of governmental connection, either direct connection of the government using the area boys or maybe, although this doesn't seem to be quite the thrust of the evidence, inability to control the area boys. Right. Assume for the moment that you can get over that hurdle. What evidence do we have that if he's returned, he won't be just mistreated, but tortured? I mean, torture is a pretty high hurdle to get past. Well, I mean, this Court's familiar with Nigeria, certainly from this case and other cases. I mean, it's a broken-down country that has a history of oppression, abuse, and torture generally. Looking specifically at this case, we certainly have Usanga's experience having been there on previous visits where he was tortured and he testified that he was beaten with an electrical cord or a rope or something of that nature. That's the main evidence. And also his testimony that he's been targeted and that he believes he will be targeted in the future based on his experience and his understanding and familiarity with the culture. Okay. I think we've got your position. Let's hear from the government and then you've got some time to respond. Thank you, Your Honor. Thank you. May it please the Court, Yanal Yusuf for the Attorney General. This Court should uphold the agency's decision and deny the Petitioner for review. Petitioner has failed to demonstrate that the record would compel the reversal of the agency's finding that he failed to meet his burden of proof for protection under the Convention Against Torture. Specifically, as has been discussed, there is no evidence in the record, aside from Petitioner's testimony, to establish any connection or acquiescence or consent by the government to the actions of the area boys. Well, but his testimony is, of course, evidence, as you just indicated, and it's not nothing. So what countervailing evidence do you have that supports the decision that there is no connection between the area boys and the government? As the agency relied on, they specifically noted that it's, in fact, it's an adversarial relationship between the area boys and the government. Instances of where the area boys attacked a Nigerian soldier, and in response, the Nigerian government arrested over 200 area boys. Other examples include the government making active efforts to rehabilitate the area boys in order to, I guess, reduce the violence and street criminality of the area boys. Also in the evidences, Petitioner's brother-in-law's testimony indicated he described them as a gang that would extort money from you. And other evidence submitted by the Petitioner himself described them as armed street children and gangs that, I guess, prey on the general populace in Nigeria. Yeah, but that last is not necessarily inconsistent with them acting on behalf of the government. That is to say, you know, it's not unknown for some governments to extort money from the population by force. That may be the case. I guess in the record, the evidence here would not compel the fact that to support a contrary conclusion to the agency where there was an absence of anything that would establish that there were connected to or, in fact, there was no acquiescence or inability or unwilling to combat the area boys, the record demonstrates the government made efforts to reduce the violence of the area boys in an attempt to, I guess, protect its populace. What are we to do with his direct and very clear testimony, which we are to treat as credible because of no adverse credibility finding, where he simply states quite unambiguously that the area boys are part of the government, part of the security services? As to that point, first preliminary, his testimony wasn't entirely unambiguous in that he initially referred to them as a gang and then later in questioning he referred to them as part of the, I guess, Nigerian security service. But taking his testimony as credible, that would be merely sufficient to, in some instances, meet his burden of proof. However, where the record evidence, the objective evidence, especially in the State Department report and his own evidence, when it counteracts that and the weighing of that evidence, it wholly does not support his claim, as it's purely just his testimony that would support any connection. The record is devoid of any other evidence in that regard. As that is the sole issue, I think I'm good. Thank you. Okay. Any further questions from the bench? Okay. Thank you very much. Yeah. Briefly, Your Honor. I guess what's troubling about this case and with the decision of the board is that it assumes a monolithic approach to the Nigerian government to the area boys and sort of a monolithic entity called the area boys. And it's more likely, and certainly the only reasonable inference here is that the area boys are sometimes attacked by the government and controlled by the government. And other times the government acts with the assistance and cooperation of the area boys. It certainly goes back to the area boys beat him until I paid him $500 and then later $1,000. Isn't that an indication that they're operating on extortion? Absolutely, Your Honor. And the fact that that took place in at least one incident at a police station certainly draws the connection between the government and the area boys. Why does that draw the connection? Because he was at the police department. It's the way Usanga refers to it, but it was a facility run by the state security services. So somehow it went from an area boys incident to a government facility. Let me make sure that I'm understanding the evidentiary record on this. He was beaten and abused by the area boys and he was at a police station and he had to pay a bribe to the police. But I think those are separate incidents. Is that correct? They appear to be separate incidents. Again, the record is somewhat, the testimony is somewhat ambiguous, but it appears that there may have been a 1999 incident and a 2000 incident. But is there testimony, what I want to make sure I've got cleanly in mind, was there testimony from your client that the beating and the electrical shocks took place at the police station? My recollection is that he didn't testify to that, but if he did, I really want to know. Okay, Your Honor. Again, I was seeing that as sort of an ambiguous connection and it's not entirely clear from the record the way I read it either. Okay. But if I may, I'll take another close reading of that in light of the court's question. Well, I see that I'm out of time. Yeah. If you want supplemental briefing on that issue, I'd certainly be willing to provide it, but I think the record is clear there that it's ambiguous. Well, if we want something more, we will ask for it, and unless we do, you're not necessarily, you don't need to supply something. Okay. Thank both sides for the argument, and I want to say specifically what Judge Smith said and I know Judge Hugg also feels. We are extremely grateful to people who behave as pro bono counsel in these cases. It's very helpful to the court. Thank you. Thank you, Your Honor. And you did a very nice job. Thank you. The case of Usanga v. Holder is now submitted for decision.
judges: Hug, Fletcher W. , Smith M.